## In the Matter of the Estate of ELIAS A. COHEN, Deceased.

Surrogate's Court, New York County, May 15, 1962.

*Carb, Luria, Glassner & Cook* (*Daniel Scheyer* of counsel), for Walter Cohen and others, as executors, petitioners, and of counsel to *Sapinsley & Lukas* for Elias A. Cohen Foundation, respondent. *Sinsheimer & Sinsheimer*, respondents in person and for Estelle Frindel, individually and as executrix of Samuel Frindel, deceased, respondent. *Bernays & Eisner*, respondents in person and for Matilda K. Anhalt, respondent. *Dulon & Roe* for Meryle Evans, respondent. *Percival Sprung* for Marilyn R. Eslofsky, individually and as administratrix of the estate of Beatrice C. Rösenfeld, deceased, respondent. *Sohn & Okin* and *Earl M. Colson* for Paula C. Wilkoff, individually and as administratrix of the estate of Lillian B. Cohen, deceased, respondent. *Leon A. Munchin*, as special guardian for Paula A. Cohn and others, infants, respondent. *Berman & Glauberman*

for Felice K. Pester, respondent. *Louis J. Lefkowitz, Attorney-General* (*Julius Greenfield* of counsel), for indefinite charitable beneficiaries, respondent.

S. SAMUEL DI FALCO, S.  In this proceeding for the settlement of the account of the executors and for other relief there is presented a question raised in the answer of one of the respondents concerning the apportionment of estate taxes.  The testator directed the division of his " general estate " into 20 parts.  Three of these were left outright to a charitable foundation and the remaining 17 shares were left in separate trusts with the remainder in each case passing to the same foundation upon the termination of the respective trust estates.  The testator provided in paragraph second of his will for " the payment out of my general estate of any and all State and Federal Transfer, Estate and Inheritances taxes that might be or become due in respect to any of my property passing under my Will."  The will then went on to say that with respect to the 17 trust shares the trustees were " to hold and treat the same in its management operations and accounting, as one trust, and *to divide the income thereof into Seventeen (17) equal shares* ".  (Emphasis added.)

The difference in the ages of the life beneficiaries of the 17 separate trusts has brought about a corresponding variation in the taxes attributable to each of the funds.  It is this fact which has given rise to the controversy here for decision, the younger of the life tenants urging on the one hand that the testator in fact ruled out apportionment of the taxes as the prescription of the will with the senior beneficiaries taking an opposite view.  The self-interest of the beneficiaries has, of course, dictated the course of the argument.  If the taxes were to be assessed equally against the 17 parts there would be an equality in the distribution of income whereas if apportionment were required the trusts for the senior beneficiaries would enjoy the benefits of the larger exemptions based upon the corresponding increase in the value of the remainders passing to charity.

This will presents a variation upon a familiar theme.  It is to be noted that the direction for payment of taxes from the general estate has reference only to the residuary bequests, for the testator left no other legacies.  Coupled with that direction were his instructions that the trustees treat the 17 shares as one trust and " divide the income thereof into Seventeen (17) equal shares which are hereinafter referred to as ' Income Shares '."  If the taxes were apportioned on those component parts of the general estate the income each would be capable of producing would differ in amount from that produced by the others and consequently it is impossible to reconcile the testa-

tor's so clearly stated purpose with the view that taxes must be apportioned producing a totally different result.

Viewed in this light the will is seen to contain the clear direction against apportionment of which the cases speak. (*Matter of Pepper*, 307 N. Y. 242; *Matter of Mills*, 189 Misc. 136, affd. 272 App. Div. 229, affd. 297 N. Y. 1012.) If he did not say so in so many words, the testator nevertheless stated a purpose possible of accomplishment only if we rule out apportionment as the direction of the will, except as between the exclusively charitable and the partially charitable bequests. That being the case the court holds that apportionment is not required, and that the total taxes due are to be treated as though they fall in the category of administration expenses which all of the residuary legacies, with the exception of the shares passing outright to the charitable foundation will bear equally. (*Matter of Cromwell*, 199 Misc. 143, affd. 278 App. Div. 649, affd. 303 N. Y. 681.) The formula to be employed in the computation requires that the distributable estate be divided into 20 parts. Three shares pass outright to the foundation and from the over-all balance then remaining there is to be deducted the total tax due with the remainder being divided into the 17 equal shares directed by the testator. (*Matter of Slade*, 4 Misc 2d 616.)

The employment of the formula described is called for because of the fact that the testator differentiated between the three shares passing outright to the foundation and the remaining shares which were left in trust as described. The fiduciaries would not be concerned with the income earned on the outright gift after it had been transferred to the legatee. The contrary is true of the shares left in trust, and it was to this segment of his general estate that the testator addressed himself when he spoke of an equality in the distribution of income to the selected recipients.

It is not to be thought that the holding here made is an attempt to distinguish the ruling of the Court of Appeals in *Matter of Shubert* (10 N Y 2d 461) for none is necessary. In that case there was no reference in the will to an equality of income and an apportionment as between the charitable and noncharitable beneficiaries only was required as the court said (pp. 473–474): " Thus, it is clear that provisions for equality, even when repetitious, do not amount to unambiguous directions against apportionment (*Matter of Williams*, 12 Misc 2d 136, 138, *supra*; *Matter of Wahr*, 370 Pa. 382, 387). ' An equal division of assets * * * does not necessarily mean an equal *tax* burden. * * * As none of the gifts to the charities contributed to the federal tax burden, it is just and equitable that such charitable

gifts should be relieved from the payment of any part of such tax * * * use of the word "equal" does not indicate contrary intent' (*Matter of Wahr, supra,* p. 387; *Matter of Williams, supra,* p. 138). The testator is presumed to know the law and the impact of estate taxes. Since he did not expressly make a direction against apportionment within the residuary, he must be presumed to have intended 'gross equality' or equality prior to taxes, rather than 'net equality' or equality after the tax impact (*Jerome* v. *Jerome,* 139 Conn. 285). The loss of 'equality' or the upsetting of proportions set up in the will is a consequence of apportionment whenever a proportion or percentage of residue is left to an exempt beneficiary and another proportion or percentage is bequeathed in a taxable manner.''

Unlike *Shubert,* in the present case the testator avoided the impact of apportionment, except as between the exclusively charitable and the partially charitable legacies, through the use of the explicit direction that the "income" was to be divided into 17 equal shares. The distinction renders the holding in that case inapplicable to this will.

In coming to this conclusion the court does not reach the collateral argument of those who oppose apportionment to the effect that the matter is governed by a prior agreement of the parties resulting in the compromise of the controversy then existing though there is much to be said for that reasoning.

An intermediate decree may be submitted on notice incorporating the substance of this decision.