John D. Bennett, S.
In this accounting proceeding the court is asked to construe the il true and proper meaning and effect of Article Second of the Will ” of the deceased, which reads as follows: “ I direct that all estate, transfer, succession, inheritance, legacy and -similar taxes together with interest and penalties if any upon or with respect to any property required to be included in my gross estate under the provisions of any tax law whether or not passing under the provisions of this my Will or any codicil or upon or with respect to any bequest or devise made in this my Will or any codicil hereto or upon or with respect to any person with respect to any such property shall be paid out of my residuary estate and that there shall be no apportionment of any such taxes, interest or penalties.”
After specific bequests in articles Fourth through Ninth, the deceased in article Tenth placed the rest, residue and remainder in trusts on a percentage basis, 35% in trust for the benefit of his daughter Jean Allen for life and upon her death, one half thereof for the benefit of granddaughter Pamela Edwards for life with remainder to her descendants, if any, and if none to the Massachusetts Institute of Technology, the other one half to be distributed to named charities; 35% in trust for the benefit of his daughter Charlotte P, Jennings for life and upon her death, one half thereof for the benefit of granddaughter Pamela Edwards for life with remainder to her descendants, if any, and if none to the Massachusetts Institute of Technology, the other one half to be distributed to the Massachusetts Institute of Technology. The remaining portion of the residuary was placed 15% in trust for granddaughter Pamela Edwards, 10% in trust for niece Harriet C. Hansen, and 5% in trust for niece Barbara Cox, each trust having provisions for contingent secondary beneficiaries and contingent remaindermen, with the Massachusetts Institute of Technology named as alternate remainderman.
The executor construes article Second of the will as a direction against apportionment of estate taxes only as to nontestamentary property and pre-residuary legacies, and as a direction that taxes be apportioned within the residuary estate. The charities appear herein and advocate this same position that they may have the benefit of section 124 (subd. 3, cl. [ii]) of the Decedent Estate Law and be free from estate tax. In the event this construction is upheld, the savings in Federal estate taxes will be in the approximate amount of $800,000 and the portion of the tax allocable against the individual beneficiaries would be proportionately increased. Certain of the beneficiaries of the trusts oppose this construction and contend the words used in *411 article Second of the will are unambiguous and are a direction against apportionment within the residuary estate and that estate taxes should be paid off the top of the residuary.
A hearing has been held and two letters dated November 3, 1955 and November 21, 1955, written to the testator by counsel who prepared the will, were admitted into evidence as Exhibits 1 and 2 (see decision of this court dated Jan. 23, 1964). Exhibit 1, at page 3, reads: ‘ ‘ However, our computations indicate that we may be able to take advantage of a recent case in the Surrogate’s Court to obtain even greater tax savings by a minor modification of the dispositions in the enclosed draft. If you were to provide in the case of the trusts for Mrs. Allen and Mrs. Jennings that upon the death of the primary life beneficiary one half of the principal be paid to Massachusetts Institute of Technology and the other half of each trust be held in further trust for Pamela Edwards, a substantial further saving can be realized. If this plan is adopted we could delete the words ‘ as an expense of administration of my estate ’ in article Second of the present draft. The estate taxes would then be apportioned exclusively to the trusts with non-charitable remainders and the charitable trusts would be correspondingly increased in size. This would create a larger charitable deduction and a corresponding decrease in estate taxes. The reason for bequeathing 50% of the remainder of the trusts for each of your daughters to charity is that if the entire charitable gift is hinged on Mrs. Jennings’ trust, it will bear no tax while Mrs. Allen’s trust will, thus creating an inequality between the trusts. If the alternative plan is adopted, the combined estate taxes will be approximately $4,282,491, a very substantial additional saving.”
The beneficiaries object to the consideration by the court of Exhibits 1 and 2, claiming there is no ambiguity in the language of the will; that these exhibits were improperly introduced to show the intent of the testator and to correct a draftsman’s error.
On a careful reading of article Second, we find an ambiguity revolving around the use of the word “ such ”. This adjective •is used twice, first to modify the word “ property ” and second to modify “ taxes, interest or penalties ”. The “ no apportionment. of any such taxes, interest or penalties ” modifies and refers “to any such property ”, in turn referring to the non-testamentary' and pre-residuary bequests. Exhibits 1 and 2 as background facts substantiate this interpretation of the testator’s intent.
*412 In Matter of Powers (85 N. Y. S. 2d 607, 609) Surrogate Delehanty said: “ While resort to express declarations is rarely permitted proof of background facts is regularly taken because such facts bear directly on the actual meaning of the words used in the will as deceased understood them. The courts go far to seek a testator’s meaning in the background facts rather than take oral declarations which might involve the peril of making• oral wills.” In the opinion of the court, Exhibits 1 and 2 show the actual meaning the words the testator used in article Second of the will meant to him, and what he desired to accomplish by their use.
The will named charities as remaindermen in the two 35% — trusts in the residuary to the extent of one half of each, while in the prior wills, charities were named only as contingent remaindermen in the event there were no descendants to receive. The trusts in these prior wills would not qualify for charitable tax relief.
It is thus apparent the testator revised his testamentary scheme in his probated will by adding the charities as remainder-men, and the letters from his counsel explain this change of plan and the tax advantages thereof.
There is a strong policy in favor of statutory apportionment, and those controverting its application must bear the burden of proof (Matter of Shubert, 10 N Y 2d 461, 471). The beneficiaries have not successfully controverted this presumption.
Accordingly the court holds that it was the intention and testamentary scheme of the testator that taxes be apportioned within the residuary estate.