Janet S. **LEWALD** and **Emanuel M. London,** as Executors of the Estate of Sidney Lewald, deceased, Plaintiffs,

v.

The **UNITED STATES** of America, Defendant.

United States District Court
S. D. New York.

Sept. 7, 1965.

Joseph Rogers, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty., Bruno Lederer, Asst. U. S. Atty., of counsel, for the United States.

RYAN, Chief Judge.

This is an action to recover a refund of Federal estate taxes in the amount of $15,112.15 plus interest. Jurisdiction is based upon Title 28, U.S.C. § 1346(a) (1). The refund sought consists of two items: a claimed overpayment due to an improper computation of the marital deduction, and a credit for Canadian estate taxes paid subsequent to the filing of the United States estate tax return.

Both parties cross move for summary judgment. (Rule 56 Fed.Rules Civ. Proc.) Summary Judgment is granted for Plaintiffs.

The decedent, Sidney Lewald, a resident of the State of New York, died testate on August 6, 1958. His executors, the plaintiffs herein, filed an estate tax return on November 5, 1959. The return showed a gross estate of $956,251.87, and adjusted gross estate of $874,293.22. Of this latter amount, the total property interests passing to the surviving spouse was $442,336.29 ($14,923.38 the value of specific bequests and $427,412.91 the value of one-half of the residuary estate). The estate paid a net estate tax of $111,-896.17, and $56,601.56 of this amount was charged against the one-half of the residuary estate left to the decedent's wife. The net value of the property interests passing to the surviving spouse, therefore, were $385,734.73 and this amount was taken as the marital deduction pursuant to Section 2056(b) (4) (A) of the Internal Revenue Code, which states that for the purpose of determining the value of any interest in property passing to the surviving spouse for which a deduction is allowed, there shall be taken into account the effect which any estate tax has on the net value of such interest.

On May 22, 1962, the executors filed a claim for refund in the amount of $15,-112.15, of which $14,806.62 was alleged to be due on the ground that, pursuant to section 124 of the New York Decedent Estate Law, McKinney's Consol.Laws, c. 13, no part of the estate taxes should have been allocated to or charged against the portion of the residuary trust passing to the surviving spouse, which qualified for the marital deduction. Therefore, according to plaintiffs, the surviving spouse was entitled to a marital deduction of $437,146.61, which represents one-half of the adjusted gross estate. While the total bequests to the surviving spouse were valued at $442,336.29, the estate is limited to a marital deduction of one-half of the adjusted gross estate—Section 2056(c) (1), Internal Revenue Code of 1954. If $437,146.61 is taken as the marital deduction rather than $385,-734.73, the taxes due are only $97,089.55. Plaintiffs allege that they are entitled to the difference between this amount and $111,896.17 the tax originally paid.

Plaintiffs also allege that they are entitled to $305.53 on the ground that the estate paid this amount in Canadian estate taxes and never claimed a credit in its tax return.

The Government contends that not only was the original return correct in reducing the marital deduction by a portion of the federal estate tax, but in addition, the return should have further reduced the marital deduction by a pro-rata share of the New York State death taxes. While the time for an additional assessment by the Government has expired, the Government nevertheless contends that the claim for credit for taxes paid to Canada must be offset by the increase in tax due to the Government by the estate's alleged failure to reduce the marital deduction by an aliquot share of the state death taxes.

The principal dispute between the parties concerns the application of Section 124 of the New York Decedent's Estate Law.[1] Both parties agree that for

---

1. Decedent Estate Law § 124
     (McKinney's Consolidated Laws of New York)
     "§ 124. Apportionment of federal and state estate or other death taxes; * * *
     "1. Whenever it appears * * *, that an executor, * * *, has paid * * * an estate or other death tax under any law of the state of New York or of the United States upon * * * any property required to be included in the gross tax estate of a decedent under the provisions of any such law, * * *,

the amount of the tax, except in a case where a testator otherwise directs * * *, shall be equitably apportioned among the persons interested in the gross tax estate * * *.
     "2. In the absence of directions to the contrary, where a trust is created, * * * whereby any person is given an interest in income, or an estate for years, or for life, or other temporary interest in any property or fund, the tax apportionable against both such temporary interest and the remainder thereafter shall

the purpose of computing the marital deduction, the allocation of estate taxes should be determined pursuant to state law. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106 (1942). In Riggs, the Supreme Court held that Section 124 is not in conflict with the federal estate tax law.

> "We are of the opinion that Congress intended * * * that the applicable state law as to the devolution of property at death should govern the distribution of the remainder and the ultimate impact of the federal tax * * *. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should determine the ultimate thrust of the tax." pp. 97–98, 63 S.Ct. p. 110–111.

Section 124 provides in effect that, except as otherwise directed by the decedent's Will, the burden of any federal death taxes paid by an executor shall be spread proportionately among the distributees or beneficiaries of an estate.

Decedent's Will was executed on June 22, 1948, and the codicil thereto was executed on January 12, 1956. After certain specific bequests, the testator by his will bequeathed the residue of the estate to trustees, in trust, to pay the income and principal as follows:

a) ¼ of the income to his mother, and upon her death, the said portion to be added to his wife's share.[2]

b) ¾ of the income to his wife (Janet), until she reaches the age of fifty.

c) When his wife (Janet) reaches the age of fifty, ½ of the principal is to be paid to her.

d) ¾ of the income from the remaining ½ of the principal is to be paid to Janet until she reaches the age of sixty, at which time the other ½ of the principal is to be paid to her.

e) The wife was given the power to appoint by will or other instrument who will receive the one-half payable to her at age, fifty, in the event of her death before age fifty.

f) If the wife died before age fifty, without having exercised her power of appointment, the entire residuary estate was to be paid to a charity.

g) If the wife died after age fifty, but before age sixty, one-half of the residuary estate was to be paid to the charity.

The Will in paragraph "8" then provided that the foregoing provisions were to be subject to the requirement that "in any event, during the life of my beloved mother, she shall receive one-fourth of the income."

Further, paragraph "14" directed that "every inheritance, transfer or legacy tax upon or on account of any gift, bequest or devise made by me or any right of inheritance or succession under this my Will under the laws of the United States or under the laws of the State of New York, or any other State or Country *be paid out of my residuary estate.*"

be charged against and shall be paid out of the corpus of such property or fund without apportionment between remainders and temporary estates. * * *

"3. In the absence of directions to the contrary, (i) apportionment of the tax shall be made among the persons benefited in the proportion that the value of the property or interest received by each such person benefited bears to the total value of the property and interest received by all persons benefited, * * *; (ii) any exemption or deduction allowed under the law imposing the tax by reason of the relationship of any person to the decedent * * * or by reason of the charitable purposes of the gift shall inure to the benefit of the person bearing such relationship * * * or receiving such insurance Proceeds or charitable gift, * * *."

2. Decedent's mother predeceased him, so that the provisions relating to her were of no effect. However, as will be shown, infra, the provisions relating to the mother may be considered in determining the testator's intent and his general testamentary plan.

The Codicil, executed January 12, 1956, revoked the original paragraph (which was paragraph "7" of the Will) relating to the wife's remarriage and substituted a paragraph "7A" which provided that if the wife remarried she would receive one-half of the principal of the trust upon reaching age fifty, and the balance of the principal would continue to be held in trust and the income therefrom paid to the wife for life, and upon her death, the balance of the trust would be paid to the charity.

■ The parties agree that, pursuant to the provisions of the Will, half of the residuary clause qualifies for the marital deduction, while the other half does not qualify for any deduction. To the extent that the wife is given a right to income and a power of appointment over one-half of the principal, the one-half as to which she has a power of appointment qualifies for the marital deduction under section 2056(b) (5), Internal Revenue Code of 1954. The other one-half is a non-deductible terminable interest under section 2056(b) (1). It is not claimed that the contingent bequests to the charity qualify for a charitable deduction under section 2055.

Therefore, the principal issues before us are whether the testator, in his Will and codicil, directed that the taxes on his estate not be "equitably apportioned among the persons interested in the gross tax estate" (Sec. 124(1) D.E.L.); or directed that the marital deduction "allowed under the law" should not "inure to the benefit" of his spouse (Sec. 124(3) D.E.L.); or whether the provisions of Sec. 124(2) preclude apportionment within the residuary, between the portion subject to the marital deduction and the non-deductible share.

We find that there are no directions in the Will or codicil which clearly indicate an intent that there be no apportionment within the residuary, and that there is no clear intention that the wife should not receive the full benefit of the marital deduction. In paragraph "14" of his Will, the testator directed that

"every * * * tax upon or on account of any * * * devise made by me * * * under this my Will under the laws of the United States or under the laws of the State of New York * * * *be paid out of my residuary estate."*

■ It is clear, however, that under New York law, this provision exonerates pre-residuary gifts from taxes but is not a direction against the apportionment of taxes within the residuary estate. Matter of Shubert's Will, 10 N.Y.2d 461, 225 N.Y.S.2d 13, 180 N.E.2d 410 (1962); Matter of Mattes' Estate, 205 Misc. 1098, 130 N.Y.S.2d 270, aff'd 285 App.Div. 867, 137 N.Y.S.2d 836, aff'd 309 N.Y. 942, 132 N.E.2d 314; Matter of Coulter's Estate, 11 Misc.2d 851, 173 N.Y.S.2d 425, aff'd 4 A.D.2d 1019, 169 N.Y.S.2d 418; leave to appeal denied 5 A.D.2d 814, 170 N.Y.S.2d 981 and 4 N.Y.2d 676, 174 N.Y.S.2d 1025, 150 N.E.2d 774; Matter of Paine, 7 Misc.2d 795, 164 N.Y.S.2d 582, aff'd 3 A.D.2d 736, 160 N.Y.S.2d 822; aff'd 3 N.Y.2d 741, 163 N.Y.S.2d 975, 143 N.E. 2d 521; Matter of Pratt's Estate, 31 Misc.2d 300, 123 N.Y.S.2d 425.

In Shubert, supra, the testator stated in his will:

"I direct that all estate * * * taxes on my estate passing under this WILL shall be paid out of my residuary estate."

In deciding that this provision did not preclude intra-residuary apportionment, the Court of Appeals stated:

"Numerous cases have held that tax clauses similar to Shubert's do not amount to unambiguous directions against intra-residuary apportionment, and that a general direction that all estate or inheritance taxes be paid out of the residue is not the equivalent of a direction against proration within the residue itself nor a command that taxes be treated as administration expenses * * * (citing cases). Each of

these cases holds that the testator's direction that all estate or transfer taxes (whether on transfers of property passing under the will or otherwise) be paid from the residue is an expression of his intent that pre-residuary gifts be exonerated from tax, and that so much of the tax as is attributable to those bequests be charged against the residuary estate before computation of the residuary shares of the respective legatees. The direction cannot be read as a mandate that the portion of the tax attributable to the residuary assets is not to be apportioned in an equitable manner among the recipients of such residuary gifts. * * *" 10 N.Y.2d pp. 471–472, 225 N.Y.S. 2d pp. 19–20, 180 N.E.2d pp. 414–415.

■ These cases also held that a direction to pay estate taxes from the residuary estate did not preclude the deduction of marital or charitable interests which were part of the residuary. (New York law treats marital and charitable deductions identically with reference to apportionment under Section 124 of the D.E.L. See Matter of Shubert's Will, supra, p. 474, 225 N.Y.S.2d 13, 180 N.E.2d 410.)

The Government contends that the testator provided for payment of specified percentages of income and corpus, that if there is apportionment it would be impossible to accomplish these directions, and that therefore, this indicates direction on the part of the testator that there be no apportionment.

■ In Shubert, supra, however the testator bequeathed the residue of his estate to four trustees to be divided into six "equal shares or portions". Three of such equal shares, comprising one-half of the residuary estate constituted the principal of a single trust of which a charitable foundation was both remainderman and income beneficiary. The remaining three equal shares were set up in three separate trusts with income payable to certain named individ-

uals for their lives. Upon the termination of these life estates, the principal of these individual trusts was to go over to the same charity named as beneficiary of the first three trusts. The Court of Appeals held that even though the testator had directed that the residue be divided into "equal" shares, estate taxes were to be apportioned between the residuary legatees pursuant to Section 124 of the Decedent Estate Law, and that the charitable legatee was entitled to exoneration from such apportionment and to the benefit of its charitable deduction under the Internal Revenue Code. (In addition, the court held that there should be apportionment between the three private income trusts even though that due to the varying ages and life expectancies of the income beneficiaries the value of the three individual trusts would bear unequal shares of the residuary tax burden and ultimately would be unequal in value.) It wrote:

"* * * we have held that, in the absence of a clear, unambiguous direction to the contrary in the will, apportionment pursuant to statute will be directed. There is a strong policy in favor of statutory apportionment, and those controverting its application must bear the burden of proof * * *. p. 471, 225 N.Y.S.2d p. 19, 180 N.E.2d p. 414.

And later, the court continued:

"Thus, it is clear that provisions for equality, even when repetitious, do not amount to unambiguous directions against apportionment (Matter of Williams, 12 Misc.2d 136, 138, 176 N.Y.S.2d 895, 897, supra; Matter of Wahr's Estate, 370 Pa. 382, 387, 88 A.2d 417, 419). 'An equal division of assets * * * does not necessarily mean an equal *tax* burden. * * * As none of the gifts to the charities contributed to the federal tax burden, it is just and equitable that such charitable gifts should be relieved from the payment of any part of such tax * * * use of the word "equal" does not indicate contrary intent'

(Matter of Wahr's Estate, supra, p. 387, 88 A.2d p. 419; Matter of Williams, supra, 12 Misc.2d p. 138, 176 N.Y.S.2d p. 898). The testator is presumed to know the law and the impact of estate taxes. Since he did not expressly make a direction against apportionment within the residuary, he must be presumed to have intended 'gross equality' or equality prior to taxes, rather than 'net equality' or equality after the tax impact (Jerome v. Jerome, 139 Conn. 285, 93 A.2d 139). The loss of 'equality' or the upsetting of proportions set up in the will is a consequence of apportionment whenever a proportion or percentage of the residue is left to an exempt beneficiary and another proportion or percentage is bequeathed in a taxable manner." 10 N.Y.2d pp. 473–474, 225 N.Y.S.2d p. 21, 180 N.E.2d p. 416.

New York courts have followed this reasoning even where a testator has directed that his residuary estate be divided into specified percentages. In Matter of Pratt's Estate, supra, testatrix left her residuary estate in trust for her daughter for life, and the remainder two-thirds to charity and one-third to an individual. In spite of these provisions, the court held that the charitable legatees were entitled to their exemptions and that the entire tax should be paid by the individual residuary legatee. The testator in Matter of Myers' Will, 7 Misc. 2d 664, 160 N.Y.S.2d 496, directed that 40 per cent of his residuary estate be set apart as a separate trust for the benefit of his wife. The balance of the residuary estate was divided into three shares of 20 per cent each to be held in three separate trusts, one for the benefit of a sister and two for the benefit of two brothers. The court held that:

"The will is silent as to which one or more of the residuary trusts shall bear any estate tax imposed upon residuary gifts. The Court accordingly determines that the estate tax must be apportioned within the respective residuary trusts so that the surviving spouse shall receive the benefit of any exemption or deduction allowable to her under the law imposing the tax." pp. 666–667, 160 N.Y.S.2d p. 498.

In neither of these cases was the court concerned that tax apportionment would cause the beneficiaries to receive different percentages of the residuary than the testator had specified.

The Government contends, however, that in none of the cases cited by plaintiffs was "testator's intent to avoid apportionment, as manifested from a consideration of the entire testamentary scheme, as clear as it is in the instant case." The Government points to the provisions of the testator's Will and codicil which direct that the testator's mother is to receive one-fourth of the income, and his wife three-fourths of the income of the residuary trust ("In any event, during the life of my beloved mother, she shall receive one-fourth of the income"); and to those provisions which refer to "one-half of the residuary estate" and "one-half of the principal".

In In re Cohen's Estate, 35 Misc.2d 23, 229 N.Y.S.2d 340 (1962), cited by the Government, the Surrogate did not permit apportionment between the income and remainder interests within a number of trusts. The testator directed the division of his "general estate" into twenty parts. Three of these were left outright to a charity and the remaining seventeen shares were left in separate trusts with the remainder in each case passing to the same charity upon the termination of the respective trust estates. The Will stated that with respect to the seventeen trust shares, the trustees were "to hold and treat the same * * as one trust, and *to divide the income thereof into Seventeen (17) equal shares.*" The Surrogate held that the three trusts which were left outright to a charity did not have to pay any of the tax, and that the estate taxes due were payable equally from each of the seventeen trusts without apportionment. The situation was said to be different than in

Matter of Shubert's Will, supra, because in Shubert there was no reference in the Will to an equality of income. The Surrogate wrote:

> "Unlike Shubert, in the present case the testator avoided the impact of apportionment, except as between the exclusively charitable and the partially charitable legacies, through the use of the explicit direction that the 'income' was to be divided into seventeen equal shares." 229 N.Y.S. 2d pp. 343–344.

The Surrogate in In re Cohen's Estate reasoned that if the taxes were apportioned on these component parts of the general estate the income each would be capable of producing would differ in amount from that produced by the others and consequently it would be impossible to reconcile the testator's clearly stated purpose that there be equality of income with the view that taxes must be apportioned producing a totally different result. Consequently, the Surrogate held:

> "Viewed in this light the will is seen to contain the clear direction against apportionment of which the cases speak. * * * If he did not say so in so many words, the testator nevertheless stated a purpose possible of accomplishment only if we rule out apportionment as the direction of the will, except as between the exclusively charitable and the partially charitable bequests." 229 N.Y.S. 2d p. 342.

It is true that in the instant action, the Will provides that the testator's mother is to receive one-fourth of the income, and his wife three-fourths of the income of the residuary trust, but unlike In re Cohen's Estate the testator's directions, in this instance, can be accomplished even if there is apportionment. If the testator's mother had survived the testator, she could have received one-fourth of the income of the entire residuary even if the one-half of the residuary over which the wife was granted a power of appointment was allowed a marital de-

duction and did not contribute to the payment of taxes. The trustee could have administered the amount of income received from the one-half of the residuary not subject to the marital deduction so that the mother and the wife would receive the stated percentages of income. Therefore, it cannot be said that in the instant action the testator's Will contains "a clear direction against apportionment". Likewise, it is true that if the tax burden is apportioned, provisions of the Will directing payment of "one-half of the principal" and "one-half of the residuary estate" would not be able to be accomplished in the exact percentages directed. This situation, however, is no different than the situations presented in Shubert, Pratt or Myers. Therefore, not only did the testator not direct against apportionment, but it appears that he intended that his wife receive the full benefit of her marital deduction and that his estate receive the most favorable tax treatment permissible under the law.

The Government also contends that the instant action is distinguishable from most of the cases cited by plaintiffs because these cases involved a residue of two or more trusts, or two or more outright bequests, whereas in the instant action the residue consists of a single trust with a single corpus. According to the Government, there can be no allocation of taxes between the interests of a single trust. Not only is there no prohibition in Section 124 D.E.L. against apportionment within one trust, but in addition plaintiffs cite several cases, which permitted apportionment where there was only a single trust. See Matter of Pratt's Estate, supra, Estate of Edwin E. Jack, 8 T.C. 272 (1947) and In re Potter's Will, 43 Misc.2d 409, 251 N.Y.S. 2d 95. Likewise, in Matter of Shubert's Will, supra, there was apportionment within one trust. As previously mentioned, three of the trusts were set up so that in each one certain individuals received the income for their lives and upon the termination of these life estates the corpus was to go to a charity. The

individual beneficiaries argued in Matter of Shubert's Will that

"* * * due to the varying ages and life expectancies of the respective income beneficiaries the value of the three individual trusts would bear unequal shares of the residuary estate tax burden and ultimately would be unequal in value contrary to the express residuary disposition" 10 N.Y.2d p. 470, 225 N.Y.S.2d p. 18, 180 N.E.2d p. 414.

The Court of Appeals, after deciding that the provisions in the Will for equality did "not amount to unambiguous directions against apportionment", stated:

"What we have said above applied equally to the argument that there should be no apportionment between the three private income trusts. The will contains no clear direction against apportionment within the residue, nor any direction against apportionment within any part or parts of the residue, assuming *arguendo* that a partial direction is permissible." p. 475, 225 N.Y.S.2d p. 23, 180 N.E.2d p. 417.

It is clear that the Court of Appeals permitted apportionment between different interests within the same trust.

 Likewise, we find that apportionment in the instant situation is not contrary to Section 124(2) of the New York Decedents' Estate Law. This Section deals only with the apportionment between income and remainder beneficiaries and states that there shall be no apportionment, but that the entire tax burden shall fall on the corpus (remainder) of the trust. In the instant action none of the taxes will be apportioned to any income beneficiary. Apportionment will take place only between the one-half of the corpus (remainder) subject to the surviving spouse's power of appointment, and the other one-half of the corpus (remainder). (See Matter of Pratt's Estate, supra, 31 Misc.2d p. 301, 123 N.Y. S.2d 425.)

We conclude that the entire tax on the residuary bequests should be paid from the one-half of the residuary which does not qualify for the marital deduction, and that therefore, the estate is entitled to deduct at least one-half of the residuary. In light of this holding, the estate did not have to reduce the marital deduction by the amount paid for New York death taxes, and therefore, the estate is entitled to a refund of the $305.53 which represents a credit for taxes paid in Canada. Taxes attributable to the pre-residuary legacies however must be paid first from the general residuary estate without apportionment, before the amount of the residuary, which is to be apportioned is determined. Judgment may be settled on notice, with these figures correctly stated and calculated, granting a refund and interest (pursuant to sections 6611(a) and (b) Internal Revenue Code).