T.C. Memo. 1998-416


UNITED STATES TAX COURT


ESTATE OF BETTY PACE MILLER, DECEASED,
JERRY D. WALKER, INDEPENDENT EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11889-97.                    Filed November 18, 1998.


<u>Valentine C. Cronin</u> and <u>Richard Keys Disney</u>, for petitioner.

<u>John R. Hunter</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Chief Judge</u>:  Respondent determined a deficiency of $408,274 in the Federal estate tax of decedent's estate.  After concessions, the sole issue for decision is whether, under the terms of decedent's will and Texas law, the surviving spouse's portion of the residuary estate is required to bear a proportionate share of Federal estate tax, thereby reducing the

amount of the allowable marital deduction pursuant to section 2056(b)(4)(A). Unless otherwise indicated, all section references are to the Internal Revenue Code in effect as of the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the facts set forth in the stipulation are incorporated in our findings by this reference. Betty Pace Miller (decedent) died on December 6, 1993, a resident of Comal County, Texas. Decedent was survived by her husband, Charles E. Miller (Mr. Miller); her daughter, Marilyn Miller Slaughter; and her son, Robert Charles Miller. At the time the petition in this case was filed, the executor's address was in Irving, Texas.

Decedent executed a last will and testament (the will) on October 3, 1984, referring to the "Miller Family Trust" (the trust), which was established by a separate instrument on the same day. Decedent and Mr. Miller consulted Lynn Smith (Smith), a Texas attorney, regarding the plan of their estate. Smith drafted the will and the trust. In article III of the will, decedent made a specific bequest of certain personal property to Mr. Miller. Under article IV, in the event that Mr. Miller predeceased decedent, specific parcels of real property were devised to their children. In relevant part, in article V,

decedent bequeathed the residue of her estate 50 percent to Mr. Miller and 50 percent to the trust.

With respect to the estate tax, article II of the will provided:

> I direct that all estate, inheritance, transfer and succession taxes, including interest and penalties thereon * * *, if any which may be lawfully assessed by reason of my death, with respect to any of my property, whether or not such property passes under the terms of this Will and including the proceeds of life insurance on my life, <u>shall be borne by my residuary estate. Such payment shall be made as an expense of administration without apportionment and without contribution or reimbursement from anyone</u> whomsoever, including beneficiaries of policies of insurance on my life. [Emphasis added.]

Section 10.1.13 of the trust referred to payment of estate tax, as follows:

> <u>Power to Aid Estates of Grantors:</u> The Trustee, if funds or property be available and unless otherwise directed by the Will of either Grantor, may within his discretion pay any portion of the Estate, inheritance, legacy and transfer taxes levied by reason of the death of either Grantor including any part thereof which is attributable to the Trust Estate. Such amounts so paid shall be made only from that portion of the Trust Estate that shall be then includable in the taxable Estate of the decedent against whom such taxes are assessed, and shall not be made out of property excluded from the taxable Estate of the decedent in question * * *. The Trustee shall also cooperate with the executor or administrator of the Estate of either Grantor, in making funds available to either of such Estates in order to assist in the payment of any such taxes * * *.

In the will, decedent appointed Jerry D. Walker (Walker) independent executor of the estate and trustee of the trust.

OPINION

Section 2001 imposes a tax on the transfer of the taxable estate of all persons who are citizens or residents of the United States at the time of death. The amount of the tax is determined, in part, by the value of the taxable estate. Sec. 2001(b). Section 2051 defines the value of the taxable estate as the gross estate less deductions. Section 2056(a) allows a Federal estate tax marital deduction from a decedent's gross estate for the value of property interests passing from the decedent to the surviving spouse. As a general rule, the marital deduction is reduced by estate succession, legacy, or inheritance taxes allocable to the surviving spouse's interest. Sec. 2056(b)(4)(A).

The issue in this case is whether the portion of the residuary estate passing to Mr. Miller should bear a proportionate share of the Federal estate tax, reducing the amount of the allowable Federal estate tax marital deduction, as contended by respondent, or whether the trust should bear all of the estate tax burden, as contended by petitioner. Section 2056 does not specify how taxes are to be allocated among the interests comprising the estate. Rather, State law governs the manner in which a decedent's Federal estate tax burden is allocated among estate assets. Riggs v. Del Drago, 317 U.S. 95, 100 (1942); Estate of Wycoff v. Commissioner, 59 T.C. 617, 622

(1973), affd. 506 F.2d 1144 (10th Cir. 1974); <u>Thompson v.</u>
<u>Thompson</u>, 149 Tex. 632, 236 S.W.2d 779, 789 (1951). Accordingly,
interpretation of decedent's will regarding payment of estate tax
is governed by Texas law.

In 1987, the Texas legislature enacted Texas Probate Code
section 322A, which provided for the apportionment of estate and
inheritance taxes for Texas residents. That statute was amended
in 1991. The amended statute became effective on September 1,
1991, and applied to the estates of decedents who died on or
after that date. This statute provides, in pertinent part, as
follows:

> (b)(1) The representative shall charge each person
> interested in the estate a portion of the total estate
> tax assessed against the estate. The portion of each
> estate tax that is charged to each person interested in
> the estate must represent the same ratio as the taxable
> value of that person's interest in the estate included
> in determining the amount of the tax bears to the total
> taxable value of all the interests of all persons
> interested in the estate included in determining the
> amount of the tax. * * *
>
> (2) Subdivision (1) of this subsection does not
> apply to the extent the decedent in a written inter
> vivos or testamentary instrument disposing of or
> creating an interest in property specifically directs
> the manner of apportionment of estate tax * * *.
>
>        *      *      *      *      *      *      *
>
> [4](c) Any deduction * * * allowed by law in
> connection with the estate tax inures to a person
> interested in the estate as provided by Subsections
> (d)-(f) of this section.

(d) If the deduction * * * is allowed because of the relationship of the person interested in the estate to the decedent, * * * the deduction * * * inures to the person having the relationship * * *. [Tex. Prob. Code Ann. sec. 322A (West 1980 & Supp. 1993).]

Generally, in the absence of specific directions in the will regarding the apportionment of estate tax, the State's apportionment statute mandates that estate tax be apportioned among estate beneficiaries according to the taxable value of their respective interests in the estate. Tex. Prob. Code Ann. sec. 322A(b)(1). Apportionment, pursuant to the statute, takes into consideration bequests qualifying for the marital deduction, and no estate tax is apportioned to the surviving spouse with respect to such bequests. Tex. Prob. Code Ann. sec. 322A(c) and (d). The Texas statute, however, allows the decedent to opt out of the general scheme by specifically providing for an alternative plan of apportionment. Tex. Prob. Code Ann. sec. 322A(b)(2).

The dispute in this case principally concerns the effect of the provision in decedent's will that estate tax be borne by the residuary estate "as an expense of administration without apportionment and without contribution or reimbursement from anyone * * *, including beneficiaries", specifically whether that provision negates application of Texas Probate Code section 322A(b)(1), in accordance with subsection (b)(2) of that statute. The highest court of Texas has not spoken directly on the matter

before us; therefore, we must examine the question as if we were a Texas court. <u>Commissioner v. Estate of Bosch</u>, 387 U.S. 456, 465 (1967).

In Texas, the cardinal rule for construing a will mandates that the decedent's intent be ascertained by looking to the will as a whole, as set forth within the four corners of the document. <u>Perfect Union Lodge No. 10 v. Interfirst Bank</u>, 748 S.W.2d 218, 220 (Tex. 1988); <u>Henderson v. Parker</u>, 728 S.W.2d 768, 770 (Tex. 1987); see also <u>Bergin v. Bergin</u>, 159 Tex. 83, 315 S.W.2d 943, 946 (1958) (stating that a court must examine a will in its entirety to ascertain the testator's intent). The court's responsibility is to construe the will to effectuate the testatrix's intent as far as legally possible. <u>Perfect Union Lodge No. 10 v. Interfirst Bank</u>, <u>supra</u> at 221. In interpreting the will, courts presume that there was nothing superfluous or meaningless in the will and that every word had meaning and played a part in the disposition of the property. <u>Marlin v. Kelley</u>, 678 S.W.2d 582, 587 (Tex. App. 1984, writ granted 1985), affd. <u>Kelley v. Marlin</u>, 714 S.W.2d 303 (Tex. 1986). If any particular clause or paragraph, considered alone, indicates an intent contrary to the intent manifested by the whole instrument, the court should disregard that inconsistent clause or paragraph. <u>Disabled Am. Veterans v. Mullin</u>, 773 S.W.2d 408, 410 (Tex. App. 1989, no writ); <u>Bergin v. Bergin</u>, <u>supra</u>.

In the cases involving wills directing that estate tax be paid out of the residuary "without apportionment", courts have consistently held that the decedent used this language as an election out of an apportionment statute that otherwise would apply. Estate of Fine v. Commissioner, 90 T.C. 1068 (1988), affd. without published opinion 885 F.2d 879 (11th Cir. 1989); Estate of Brunetti v. Commissioner, T.C. Memo. 1988-517. We find no reason that decedent's will should be interpreted any differently.

Petitioner contends that this Court held, in Estate of Brunetti v. Commissioner, supra, that a provision in a will that estate taxes be paid out of the residue without apportionment is insufficient direction to preclude the use of a State apportionment statute. In Estate of Brunetti, which dealt with a charitable bequest, the Court relied on the State apportionment statute, because a codicil to the original will vitiated the testator's original intent to elect out of the statute. The Court stated:

> We do not doubt that decedent's original intent * * * [estate taxes paid out of my residuary as an expense of administration without apportionment] was to override the general rule of the California apportionment statute * * * and to charge * * * [estate] taxes exclusively to the residuary estate. We must, however, also take into account the language of the codicils. In this regard, the sixth codicil of decedent's will is not clear as to decedent's intent. [Id.; citations omitted; emphasis added.]

Petitioner's reading of Estate of Brunetti is incorrect and is contradicted by the clear holding in Estate of Fine v. Commissioner, supra.

Decedent's will directs that "estate taxes shall be borne by my residuary estate."  This provision of the will indicates that decedent intended that property passing by specific bequest should not bear any portion of the estate tax.  See Estate of Phillips v. Commissioner, 90 T.C. 797, 800-801 (1988), in which we concluded that none of the Federal estate tax due on the residuary estate should be allocated to the surviving spouse's interest.  The general provisions of the Louisiana apportionment statute applied because the decedent in Estate of Phillips did not provide for an alternative plan of apportioning estate tax within the residuary.  A similar conclusion was reached in Lewald v. United States, 245 F. Supp. 336 (S.D.N.Y. 1965).

By contrast, in First Natl. Bank of Atlanta v. United States, 634 F.2d 212 (5th Cir. 1981), no State apportionment statute was in effect.  The subject will provided for the residuary to be divided into two parts, one of which was a marital trust, and for all estate taxes to be paid from the residuary of the estate.  Stating that "there is no provision for payment of estate taxes only out of the non-marital portion of the estate, even if the residue were to be divided prior to payment of such taxes", the Court held that the Federal estate

tax was to be paid out of the residue of the estate including the marital trust property.  Id. at 214.

Decedent's will expressly provided:  "Such payment [of estate tax] shall be made * * * without apportionment and without contribution * * * from anyone".  By including an express provision regarding apportionment, decedent entirely negated application of the general apportionment provisions of the Texas statute with respect to the residuary.  Tex. Prob. Code  Ann. sec. 322A(b)(2).  By directing that there be no apportionment within the residuary, decedent expressed an intention that there be no discrimination between marital and nonmarital residual beneficiaries.  Thus, the estate tax liability reduces the amount of the residuary available for distribution to Mr. Miller and to the trust.

In Estate of Fine v. Commissioner, supra, the Court interpreted a Virginia apportionment statute that is comparable to the statute in Texas.  In Estate of Fine, the decedent left one-half of his residuary estate to his wife and the other half to other beneficiaries.  The will also directed that estate and inheritance taxes be paid out of the residuary "without apportionment".  Notwithstanding the likelihood that the "decedent hoped to leave his wife in the best possible position, which would be achieved by maximizing the marital deduction, the plain language of the will * * * [did] not permit that result."

Id. at 1074. We concluded that apportionment language in the will required "that estate and inheritance taxes be paid out of the entire residuary estate." Id. at 1075. We held that the "without apportionment" language meant (1) that the maximized marital deduction safeguarded by the Virginia statute did not apply and (2) that specific bequests under the will did not bear any of the taxes due. Id. at 1076. The pertinent provisions of decedent's will in this case are indistinguishable and do not lead to a different result.

Petitioner argues that decedent could not have knowingly opted out of the statute because the statute was not enacted until 1987, 3 years after decedent executed her will. We reject petitioner's position. Although it is true that Texas did not have an apportionment statute in effect when decedent executed her will, the highly specific directive in the will that estate taxes be paid out of the residue "without apportionment" manifests an unequivocal intent that there be no apportionment. Thus, the language of the will compels the result. Further, no other portion of her will indicates a contrary intent.

Petitioner contends that, by providing that the estate tax be paid out of the residuary "without apportionment", decedent rejected equal apportionment between Mr. Miller and the trust and intended that the entire estate tax be paid by the trust. This argument is contrary to the recognized meaning of that phrase, as

discussed above. Moreover, there is no provision in the will for imposition of estate tax on the trust portion of the residuary to the exclusion of the marital portion of the residuary. Instead, decedent specifies that estate tax be paid generally out of the residuary "without apportionment". Under petitioner's reasoning, decedent could have also intended that Mr. Miller's share of the residuary bear the entire estate tax burden. In essence, petitioner asks this Court either to eliminate article II (pay estate taxes out of residuary), to rewrite it to provide that "all estate tax shall be paid from the trust portion of the residue of my estate", or to redefine the word "residuary".

Petitioner disavows any intent to eliminate altogether the Federal estate tax on the estate. Petitioner's position is:

> It was not the Testatrix's intent to eliminate the estate taxes from her Estate through the use of the unlimited marital deduction. Instead, her intent was to fully provide for her husband's needs by giving him fifty percent (50%) of her gross estate. * * * Her goal was never to eliminate estate tax, instead it was to maximize the benefits and the property passing to her surviving spouse.

Petitioner relies on the testimony of Smith, the draftsman of the will and trust, in this regard. (Although respondent objected to Smith's testimony on the ground that extrinsic evidence of intent is inadmissible, respondent's brief proposed a finding and based an argument on Smith's testimony. We hold that respondent's objection was thus waived.)

Smith testified on direct examination as follows:

Q  Okay.  When you say, estate planning, did you recall -- did you meet with Betty Pace Miller, and I believe you said, her husband --

A  Yes.

Q  -- to discuss their wishes and desires with regard to estate planning?

A  Yes.  As I recall, they had, within a short period of time before that, suffered the loss of a son who was in his twenties.  They had two other children and a sister of Mr. Miller that they were concerned about taking care of, as well as themselves.

*    *    *    *    *    *    *

A  She had an intent to look to the -- taking care of her two children that remained alive, and also to take care of her husband.  And then after her husband was taken care of, to -- whatever was left after that would be available for her children, if anything.

*    *    *    *    *    *    *

Q  Okay.  We've talked about taxes, and we've talked about marital deductions.  Can you say what the primary -- her intent was, based on your conversations with her?

A  She wanted to see that her two children that she set up, they both set up trusts for her during their lifetime, were taken care of, and his sister, then they wanted to see that he was taken care of, and then they wanted any kind of -- what was left over after taxes were paid out of that trust that were set up for the children, to be available to them.

From the testimony, we conclude that there were several intended beneficiaries, and the documents were drafted to reflect decedent's intent to provide for all of them.  Although Smith also asserted that decedent intended that all of the taxes be

paid out of the trust, he did not reconcile that intent with the language of the documents he drafted based on his contemporaneous discussions with decedent and Mr. Miller. Smith's testimony is self-contradictory to the extent that he describes in detail decedent's desire to provide for her children but asserts in general terms that she intended that the trust assets available to them bear the burden of taxes on the entire estate.

Petitioner did not corroborate Smith's testimony with any contemporaneous records, and no other witnesses were called, despite identification of the trustee as a witness in petitioner's trial memorandum. Smith's testimony does not persuade us that decedent intended to place the entire tax burden on the trust.

Petitioner also argues that the trust indicates that decedent intended estate tax be paid solely by the trust. Petitioner asserts that, by (1) including the trust in the residuary, (2) empowering the trustee to pay the estate tax, and (3) designating the residuary as the source of payment, the will makes payment of the estate tax a mandatory obligation of the trust and evinces an intent to maximize the marital deduction. Specifically, section 10.1.13 of the trust grants the trustee the discretionary power to pay the estate tax and directs that estate tax payments be made only from the portion of the trust estate included in the taxable estate of decedent. Petitioner argues

that, because the "taxable estate" does not include marital deduction property, decedent intended to exclude Mr. Miller's residual interest from the general obligation of the residuary to pay estate tax. Thus, petitioner concludes that the trust must pay the estate tax out of residuary property not qualifying for the marital deduction.

Contrary to petitioner's assertion, however, nothing in the trust instrument constitutes a direction by decedent to pay estate tax exclusively from the nonmarital property. Rather, the instrument provides that the trustee "may <u>within his discretion</u> pay any portion of the Estate" tax. (Emphasis added.) Petitioner's interpretation would ignore the reference to discretion in the provision and cannot be accepted. This discretionary provision is not sufficient to transfer the tax burden to nonmarital property for purposes of determining the marital deduction. See <u>Estate of Reid v. Commissioner</u>, 90 T.C. 304, 311 (1988). The trustees could decide how this estate tax ultimately would be paid under the trust. Their ultimate option does not control the determination of tax consequences as of the date of death. See <u>Ithaca Trust Co. v. United States</u>, 279 U.S. 151, 155 (1929).

Although Texas courts determine the intent of a testator by considering the will as a whole, <u>Henderson v. Parker</u>, 728 S.W.2d 768, 770 (Tex. 1987), the Court's interpretation of decedent's

will does not render the trust provisions superfluous or meaningless--as petitioner contends. See <u>Marlin v. Kelley</u>, 678 S.W.2d 582, 587 (Tex. App. 1984, writ granted 1985), affd. <u>Kelley v. Marlin</u>, 714 S.W.2d 303 (Tex. 1986). The trust merely provides an alternative plan of payment in case the primary direction of decedent in article II fails for whatever reason. Wills commonly contain such provisions to accommodate different scenarios upon death.

Petitioner, citing no authority, also contends that various portions of the Texas statute guarantee the marital deduction regardless of decedent's intent regarding apportionment. Petitioner claims that this construction of the statute is supported by compelling public policy because the marital deduction was designed to protect interests of surviving spouses and should not be an unreasonable trap for the unwary.

These arguments are unsupported by the language or structure of the statute, and no other apportionment statute has been interpreted in this manner. Subsection (b)(1) of section 322A of Texas Probate Code sets forth the general apportionment rule, and subsections (c) through (y) are provisions setting forth how the general rule is to be carried out. Subsections (c) through (y) do not act independently of the general apportionment provision, but rather supplement it. Thus, subsections (c) and (d) do not guarantee that the marital deduction always inures to the benefit

of the surviving spouse for purposes of apportioning estate taxes.  Those subsections only guarantee that result when the decedent does not make, by specific direction, a separate provision for the payment of estate taxes.

Petitioner objects to consideration of certain historical materials concerning the 1987 version of Texas Probate Code section 322A, contained in the stipulation.  Because these materials are not relevant to our opinion, we sustain the objection.

We conclude that, at the time of decedent's death, the property interests passing to Mr. Miller through the residuary estate were burdened with the Federal estate tax, and petitioner's marital deduction should be reduced accordingly to reflect the net value of the interests passing to Mr. Miller.

To reflect concessions and administrative expenses,

<u>Decision will be entered under Rule 155</u>.